334 A.2d 594
**COMMONWEALTH of Pennsylvania**
v.
**Julius WIDEMAN, Appellant.**

Supreme Court of Pennsylvania.
Argued Nov. 20, 1973.
Decided March 18, 1975.

700

Nolan N. Atkinson, Jr., Zack, Myers & Atkinson, Philadelphia, for appellant.

Arlen Specter, Dist. Atty., Richard A. Sprague, First Asst. Dist. Atty., Milton M. Stein, Asst. Dist. Atty., Chief, Appeals Div., John H. Isom, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

# OPINION

MANDERINO, Justice.

This is a direct appeal from a judgment of sentence following a jury verdict of murder in the second degree entered against appellant, Julius Wideman, in the Court of Common Pleas of Philadelphia.

Appellant argues that the trial court committed reversible error when, over objection, it allowed Police Detective John Smith to testify concerning a certain oral inculpatory statement made in his presence by the appellant. Appellant contends that this statement should have been excluded because the prosecution failed to demonstrate that appellant's police interrogators had afforded him an opportunity to exercise his *Miranda* rights *at the point in time* when he made the inculpatory statement. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966). There is no dispute that the appellant was twice afforded such an opportunity twelve hours prior to that point in time when he made his inculpatory statement. Relying on *Commonwealth v. Ferguson,* 444 Pa. 478, 282 A.2d 378 (1971), appellant argues that the *change in circumstances* which took place over the twelve hour period between the last *Miranda* warning and his confession required his police interrogators to afford him a new opportunity to exercise his *Miranda* rights. He contends that the twelve hour time lapse, the change of physical location between the place where

warnings were given and the place where the inculpatory statement was made, the break in the continuity of interrogation, the change of interrogators, and the material difference between the statements given following the initial *Miranda* warnings and those given twelve hours later, combine to compel the conclusion that the waiver given after the initial warnings was ineffective as to the statement given twelve hours later. We agree, and reverse appellant's conviction and grant a new trial.

At 1:10 a. m., February 28, 1971, one James Allen was shot and fatally wounded. Because an automobile registration card bearing appellant's name was found on the victim's body, the police went to appellant's home several hours later and told him that he could help them by coming to the Police Administration Building to answer some general questions regarding the decedent. At 5:15 a. m., appellant and his wife appeared at the Police Administration Building. Appellant was not taken into an interrogation room, but was questioned in a large office which houses the Homicide Division.

During questioning, police suspicion was aroused by appellant's statement that he owned a car identical to one that had been reported at the scene of the shooting earlier that morning. At this point, about 5:45 a. m., appellant was given *Miranda* warnings by Detective Bacher. No further questions were asked, and appellant remained with his wife in the Homicide Division Office until 6:45 a. m. At that time Detective Basmajian rewarned the appellant, and questioned him for about one-half hour. Appellant was not isolated at this time or taken to any interrogation room. He then remained in the Homicide Division Office until 10:30 a. m. He was provided with food and questioned further, but he continued to deny any involvement in the shooting of James Allen.

At 10:30 a. m., appellant was taken from the Homicide Division Office into an interrogation room. His wife did

not go with him. He was not given *Miranda* warnings in this interrogation room. From 10:45 a. m., until 12:00 appellant was given a polygraph test by Detective McCauley; he was alone from 12:00 to 12:30; and was interrogated by Detective Melfi from 12:30 until 12:45 p. m. At 12:45 p. m., this interrogation was interrupted. Appellant had made no inculpatory statements during this questioning.

From 12:45 p. m., until 2:05 p. m., appellant was allowed to speak with his wife, but they were never alone. A detective remained in the room. No further interrogation took place during this time period.

At 2:05 p. m., appellant was taken to yet another interrogation room and left alone. He was allowed to sleep for the next three and one-half hours. At 5:30 p. m., a Detective Kuestner, who had not previously been involved in appellant's questioning, entered this interrogation room and began a new interrogation session. No *Miranda* warnings were given. Appellant was interrogated by this detective from 5:30 to 6:00 p. m. He was alone from 6:00 to 6:20 p. m., and interrogated again from 6:20 to 6:45 p. m. At 6:45 p. m., Detective Smith entered the room. Shortly thereafter appellant gave a statement admitting the shooting. Neither Detective Smith nor Detective Kuestner were the detectives who had given *Miranda* warnings to the appellant twelve hours earlier in the Homicide Division Office. Appellant's statement was reduced to writing by Detective Smith. At 9:45 p. m., appellant was given *Miranda* warnings and the taking of a formal written statement began.

██ Initially, we note that "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda, supra,* 384 U.S. at 475, 86 S.Ct. at 1628, 16 L.Ed.2d at 724. This "high standard of proof"

must be met before a waiver of constitutional rights will be declared effective. *Id.* at 475, 86 S.Ct. at 1628, 16 L. Ed.2d at 724. Furthermore, we must "scrupulously honor" a person's right to the exercise of his right to remain silent. The accused's fifth and sixth amendment rights are so fundamental that utmost care must be taken to assure that they are preserved. *Id.* at 479, 86 S.Ct. at 1630, 16 L.Ed.2d at 726.

*Miranda* also recognized the importance of guaranteeing the accused that he will be able to freely avail himself of his constitutional rights *throughout* the interrogation process.

"The circumstances surrounding incustody interrogation can operate very quickly to overbear the will of one merely made aware of his privilege by his interrogators. . . . Our aim is to assure that the individual's right to choose between silence and speech *remains unfettered throughout the interrogation process.* A once-stated warning, delivered by those who will conduct the interrogation, cannot itself suffice to that end among those who most require knowledge of their rights. A mere warning given by the interrogators is not alone sufficient to accomplish that end. (Emphasis added.)

*Id.* at 469–470, 86 S.Ct. at 1625, 16 L.Ed.2d at 721.

. . . .

*Opportunity* to exercise these rights must be afforded to him *throughout the interrogation.* After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement." (Emphasis added.)

*Id.* at 479, 86 S.Ct. at 1630, 16 L.Ed.2d at 726.

The purpose of the procedural safeguards prescribed by *Miranda* therefore "is *to assure that the individual's right to choose between silence and speech remains un-*

*fettered throughout the interrogation process.*" (Emphasis added.) Id. at 469, 86 S.Ct. at 1625, 16 L.Ed.2d at 721. All that a warning given at the outset of the interrogation can do is "to insure that the individual knows he is free to exercise the privilege *at that point in time.*" (Emphasis added.) *Id.* at 469, 86 S.Ct. at 1625, 16 L.Ed.2d at 720. It follows, however, that at some point in time during the interrogation process, the pressures of that process will have seriously eroded the accused's awareness of his constitutional rights.

"It is obvious that such an interrogation environment is created for no purpose other than to subjugate the individual to the will of his examiner. This atmosphere carries its own badge of intimidation. To be sure, this is not physical intimidation, but it is equally destructive of human dignity. (Footnote omitted.) The current practice of incommunicado interrogation is at odds with one of our Nation's most cherished principles—that the individual may not be compelled to incriminate himself. Unless adequate protective devices are employed to dispel the compulsion inherent in custodial surroundings, no statement obtained from the defendant can truly be the product of his free choice."

*Id.* at 457–458, 86 S.Ct. at 1619, 16 L.Ed.2d at 714.

"Even preliminary advice given to the accused by his own attorney *can be swiftly overcome* by the secret interrogation process." (Emphasis added.)

*Id.* at 470, 86 S.Ct. at 1625, 16 L.Ed.2d at 721.

An accused, of course, need not be reinformed of his rights, and asked whether he wishes to assert them each time he is asked a question. On the other hand, we have held that the accused must be so reinformed, and given a new opportunity to assert constitutional rights when warranted by the circumstances. *Commonwealth v. Riggins,* 451 Pa. 519, 304 A.2d 473 (1973). Several

"objective indicia" have been noted as significant in determining the issue: we have considered (1) the time lapse between the last *Miranda* warnings and the accused's statement; (2) interruptions in the continuity of the interrogation; (3) whether there was a change of location between the place where the last *Miranda* warnings were given and the place where the accused's statement was made; (4) whether the same officer who gave the warnings also conducted the interrogation resulting in the accused's statement; and (5) whether the statement elicited during the complained of interrogation differed significantly from other statements which had been preceded by *Miranda* warnings. *See Commonwealth v. Riggins,* supra; *Commonwealth v. Ferguson,* 444 Pa. 478, 282 A.2d 378 (1971).

In applying such "objective indicia" we have, in some cases, held that the circumstances did not require a new waiver opportunity prior to the complained of interrogation: *Commonwealth v. Ferguson, supra;* (Three hour time lapse, no location change, warning officer present when statement elicited, slight change from earlier statement); *Commonwealth v. Bennett,* 445 Pa. 8, 282 A.2d 276 (1971), (Five hours, statement substantially similar to earlier statements); *Commonwealth v. Hoss,* 445 Pa. 98, 283 A.2d 58 (1971), (Several hours, no location change, continuity of interrogation); *Commonwealth v. Parks,* 453 Pa. 296, 309 A.2d 725 (1973), (Two and one quarter hours, no location change, continuity of interrogation).

On the other hand, in *Commonwealth v. Riggins,* 451 Pa. 519, 304 A.2d 473 (1973), we held defendant's statement inadmissible saying:

" . . . the police were constitutionally required to readvise appellant of his Fifth and Sixth Amendment rights prior to the oral confession. Seventeen hours elapsed between appellant's initial *Miranda* advisement and his oral confession; the warnings were given in

the police car, while the interrogation was conducted at the Police Administration Building in downtown Philadelphia; the officers who gave the warnings had no further contact with appellant once he arrived at the Administration Building and the questioning began and; the oral confession was obviously 'materially different' from the denials appellant had given, regarding the robbery and murder, for the 17 hours preceding its elicitation."

*Id.* at 527–528, 304 A.2d at 478.

The considerations behind our decision in *Riggins* are controlling here. In *Riggins* the delay between the *Miranda* warning and the confession was 17 hours; here it was 12 hours. In *Riggins* the warnings were given while the defendant was in a police patrol car but the confession was not made until after the defendant had been moved to the police station. Here both the warnings and the confession occurred within the Police Administration Building, but the confession came only after appellant had been moved out of the large Homicide Division Office where the warnings were given, into an interrogation room, and finally into a second interrogation room in which the confession was made. In *Riggins* the officer securing the confession was not the officer who gave the *Miranda* warnings; here the warnings were given by Detectives Bacher and Basmajian, neither of whom were present when the statement was made to Detectives Smith and Kuestner. In *Riggins* there was a "material difference" between the statements given to police immediately following a reading of the warnings and those given 17 hours later; here there was also a material difference between the statements given following the morning *Miranda* warnings and those given in the evening 12 hours later.

█ In these circumstances, appellant's 6:45 a. m., waiver of his *Miranda* rights was not shown by the prosecution to have been effective at the time of the 6:45 p.

m. confession. The continuity of interrogation was broken on several occasions including the time when appellant was allowed to sleep for three and one-half hours. He should have been readvised of his *Miranda* rights prior to the interrogation session during which the complained of statement was elicited. The 6:45 p. m., oral confession is therefore inadmissible at trial. Because the formal, written statement is the product of the inadmissible oral confession, it too is inadmissible:

". . . even though appellant was advised of his rights *after* the oral statement and prior to the taking of the written confession, *Harrison v. United States*, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968), mandates that it too (the written confession) be suppressed." (Emphasis in original.)

*Commonwealth v. Riggins*, 451 Pa. at 528, 304 A.2d at 478.

The judgment of sentence is reversed and a new trial granted.

EAGEN, O'BRIEN and POMEROY, JJ., concur in the result.

JONES, C. J., dissents.