387 A.2d 491

COMMONWEALTH of Pennsylvania

v.

Joshua SMITH, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 8, 1976.

Decided April 28, 1978.

David P. Trulli, Philadelphia, for appellant.

Steven H. Goldblatt and Deborah E. Glass, Assistant District Attorneys, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PER CURIAM:

Appellant was arrested for murder, robbery, and conspiracy. He was convicted in a jury trial of robbery[1] and conspiracy.[2] Appellant was then sentenced to a term in a state correctional institution.

The facts of the case are quite unique. At 11:00 p. m., March 13, 1975, a Philadelphia police officer, driving alone in a patrol car observed a fight between two men in the road. The appellant was observed on top of the other male punching him. As the patrol car approached, the appellant stopped punching the man. He picked up two hats on the ground and ran away. The police officer pursued the appellant in his patrol car, passing by the second male still lying in the intersection. The appellant was apprehended about thirty feet beyond the intersection. After the appellant was patted down, handcuffed, and placed in the patrol car, the police officer looked back to see if the second male had moved. It was then a SEPTA bus entered the intersection, running over the prone man, who was declared dead on arrival when taken to the hospital. The appellant was taken to the station house.

At the station house the appellant made three separate statements. The first occurred at 1:30 a. m. or 2½ hours after the arrest. The statement was exculpatory, the appellant claiming that the other individual had attacked him and

1. The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334 § 1, 18 C.P.S.A. § 3701 (1973).

2. The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334 § 1, 18 C.P.S.A. § 903 (1973).

he fought back in self-defense. After a polygraph examination that indicated the appellant was lying, the appellant gave a second statement at 5:15 a. m. In this statement, the appellant admitted attempting to rob the individual.[3]

Finally, at 12:30 p. m. (13½ hours after the arrest), the appellant made a third statement. The police had found a witness who stated that the appellant was with another male and took the victim's coat. The appellant in this statement identified the name of his cohort (one Brad Brown) and his address. The coat was later seized at Brown's residence without a warrant.

■ The appellant's initial contention on this appeal is that he was not adequately advised of constitutional rights. There is evidence, however, that appellant was given standard *Miranda* warnings before the first and second statements, and was aware that a murder was being investigated. Appellant further argues that *Miranda* warnings should have been given before the third statement which occurred six hours after the second. The leading case on this issue is *Commonwealth v. Wideman,* 460 Pa. 699, 334 A.2d 594 (1975). However, a comparison of the situation in *Wideman* and that of the instant case demonstrates that the two cases are distinguishable. In the instant case, the time lapse between the last warning and the prejudicial statement was half the time lapse in *Wideman,* and there was no protracted continuing interrogation between the two statements. The two statements were taken in the same room by the same detective. The two statements were substantially similar except that the appellant gave the police the name and address of his accomplice. This case, on the facts, is far removed from the situation in *Wideman,* and therefore, the repetition of the *Miranda* warnings was unnecessary.

**3.** The pertinent portion of the statement reads as follows: ". . . He fell. He was still breathing. *I was going to be in his pockets,* but my hat flew off my head and his hat too, and the man pulled up and arrested me." (Emphasis supplied)

The appellant also argues that any waiver of his rights was not intelligent or voluntary because he was drunk, not given proper warnings, denied food, and promised that he would be let go if he made a statement. However, there is evidence which establishes that appellant was at all times mentally alert and not ill-treated; and therefore, his waiver was not ineffective on the above mentioned grounds.

The appellant next points to the fact that he was not given an immediate preliminary arraignment without unnecessary delay. To this argument, there is merit. Appellant was finally arraigned approximately 37 hours after his arrest. The second statement was given approximately six (6) hours after his arrest and the third statement was given approximately 13½ hours after his arrest. The case of *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972) gives a three prong test to determine this issue.[4] The delay in arraignment must be unnecessary, evidence that is prejudicial must be obtained, and the incriminating evidence must be reasonably related to the delay. Undoubtedly, the first two prongs are satisfied. There is nothing in the record to justify a 37½ hour delay in arraignment. Nor is there anything to justify the 6 hour delay before obtaining the second statement. It is also obvious that the statements were prejudicial; in the second statement, appellant incriminated himself; in the third statement, his statement led to the police obtaining the coat as evidence. Thus, the key is whether either or both of these statements are related to the delay. The importance of immediate arraignment is to have defendants advised of their rights so as to assure a constitutionally valid procedure. The evidence obtained as a result of the third statement must be suppressed in light of *Commonwealth v. Abu-Ibn Hanifah Bey,* 462 Pa. 533, 341 A.2d 907 (1975).[5] In *Bey* the court cites *Commonwealth v. Doamaral,* 461 Pa. 517, 337 A.2d 273 (1975) and states:

4. *Futch* has since been replaced by the rule of *Commonwealth v. Davenport,* 471 Pa. 278, 370 A.2d 301 (1977).

5. A 4–3 decision, Jones, Eagen, Pomeroy, dissenting.

"It is true appellant denied involvement in the incident until informed of the witness's accusation, however, the fact that the accusation may have combined with the unnecessary delay to induce appellant's confession does not mean the confession is inadmissible (sic) We did not say in *Futch* that the unnecessary delay must be the sole cause of the confession for the confession to be inadmissible. We said that all evidence obtained during an unnecessary delay, except that which has no reasonable relationship to the delay whatsoever should be excluded . . . The fact that the confession may have also been related to other events which occurred during the delay does not eliminate its relationship with the delay."

A significant fact, in this case, is that appellant first denied guilt. It was not until six hours later that he was questioned again, and he then incriminated himself, partly because of the lie detector test and partly because of the delay. *See Commonwealth v. Dutton,* 453 Pa. 547, 307 A.2d 238 (1973), *Abu-Ibn Hanifah Bey, supra.* Therefore, in light of *Futch,* and the cases which followed it, the second statement made by appellant should be suppressed along with the evidence obtained as a result of the third statement.[6]

Appellant's other contentions, as they relate to certain alleged trial errors, are without merit, and will not be discussed herein.

The conviction of the appellant is reversed and a new trial awarded. The incriminating statements and the evidence obtained therefrom are suppressed.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

6. There is language in *Commonwealth v. Cherry,* 457 Pa. 201, 321 A.2d 611 (1974), that would allow a delay to gain information from a suspect concerning co-suspects but this must follow an initial willingness to co-operate by the suspect, something not present in this case. See also *Commonwealth v. Jones,* 473 Pa. 381, 374 A.2d 970 (1977), where the Supreme Court split 3–3 on whether a confession given 4½ hours after arrest was the product of an unnecessary delay.