**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Lance COHEN, Appellee.**

Superior Court of Pennsylvania.

Argued Aug. 22, 2012.

Filed Sept. 11, 2012.

Pier N. Hess, Assistant District Attorney, Lebanon, for Commonwealth, appellant.

Kimberly A. Adams, Public Defender, Lebanon, for appellee.

BEFORE: STEVENS, P.J., BENDER, J., and GANTMAN, J.

OPINION BY BENDER, J.:

The Commonwealth, as Appellant, appeals from the court's July 21, 2011 order granting Appellee's, Lance Cohen ("Cohen"), motion to suppress statements he made to police on two different occasions. For the following reasons, we affirm in part, and reverse in part.

The relevant facts and procedural history of this case are as follows. Cohen was suspected of being involved in three different burglaries committed in Lebanon City during the summer of 2010. Consequently, Detective Anthony Verna and Detective Ulrich[1] of the Lebanon City Police Department met with Cohen at the Lebanon County Prison on August 17, 2010, where Cohen was incarcerated on unrelated charges. At the start of the interview, Detective Verna read Cohen his *Miranda*[2]

---

1. Detective Ulrich's first name is not included in the record.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

rights from a preprinted form. N.T. Suppression Hearing, 5/25/11, at 7. The detective also gave that form to Cohen, and he read it silently to himself. *Id.* Detective Verna then asked Cohen to sign the form indicating he understood his rights and desired to "waive them and willingly make a statement." *Id.* at 30. Cohen refused to sign the document, instead "[sitting] there silently, . . . not saying anything after [the detective] read him the form." *Id.* at 31. At no point did Cohen indicate that he did not understand his rights, that he desired counsel, or that he did not want to speak with the detectives. *Id.* at 8.

Detective Verna then began asking Cohen for "biographical information such as [his] name, date of birth, [and] where he's been living." *Id.* at 8. After Cohen "answered [these questions] freely," the detective began to question Cohen regarding the burglaries. *Id.* Cohen denied any knowledge of or involvement in those crimes, and signed a consent form permitting Detective Verna to search his cell phone. *Id.* at 9–10. The interview ended when Cohen indicated he did not wish to speak to the detectives any further. *Id.* at 10.

At some point following this interview, Detective Verna discovered that Cohen had made phone calls from prison to a woman named Samantha Montgomery. *Id.* at 17, 43. On August 20, 2010, police officers went to Ms. Montgomery's apartment to speak with her. She informed them that Cohen did not reside with her, but that he did sleep at her home on occasion. *Id.* at 19. She identified certain property that he had brought into her apartment, including a Playstation gaming system and an Apple iPod. *Id.* at 20–22. Ms. Montgomery also permitted the officers to look around her residence and, in doing so, the officers found a "portable storage device" that could be "plug[ged]

into a USB port on a computer." *Id.* at 22. Ms. Montgomery did not recognize that item as belonging to her or her children. *Id.* at 23. The property recovered from Ms. Montgomery's home was later determined to have been stolen. *Id.* at 11, 24.

On September 16, 2010, Detective Verna returned to the Lebanon County Prison for a second interview with Cohen. *Id.* at 11. This time, Detective Verna did not read the *Miranda* form or otherwise verbalize those rights to him. *Id.* at 34. Instead, the detective simply told Cohen that he did not have to speak to him and if Cohen did not wish to talk, he could inform the detective of that fact and return to his cell. *Id.* at 12. Detective Verna then questioned him about the stolen items found in Ms. Montgomery's apartment. *Id.* at 25. Cohen denied knowing Ms. Montgomery, and claimed that he did not have any property at her house. *Id.* at 26. When the detective stated that the police had a search warrant, Cohen replied, "you can stick the warrant up your ass," and walked away, thus ending the interview. *Id.* at 13.

Cohen was subsequently arrested and charged with three counts of burglary, receiving stolen property, two counts of access device fraud, criminal attempt to commit theft by unlawful taking or disposition, and theft by unlawful taking or disposition. Prior to trial, he filed a motion to suppress the evidence of his August 17, 2010 and September 16, 2010 statements to police, as well as the items recovered from Ms. Montgomery's apartment. On May 25, 2011, a hearing was conducted on that motion. On July 22, 2011, the court issued an order and opinion denying Cohen's motion to suppress the physical evidence obtained from Ms. Montgomery's apartment, but granting his motion regarding his statements to police.

The Commonwealth filed a timely appeal of the court's order suppressing Cohen's statements,[3] as well as a timely concise statement of matters complained of on appeal in accordance with Pa.R.A.P. 1925(b). Herein, the Commonwealth presents two issues for our review:

A. Whether the [t]rial [c]ourt erred when it granted [Cohen's] Motion and suppressed all statements [he] made to police on August 14, 2010 even though [Cohen] affirmatively waived his rights pursuant to *Miranda* [?]

B. Whether the [t]rial [c]ourt erred when it granted [Cohen's] Motion and suppressed all statements [he] made to police on September 16, 2010 even though [Cohen] was apprised of his *Miranda* rights numerous times in the past, was not questioned about any criminal activity, chose to speak with law enforcement and, as such, affirmatively waived his rights pursuant to *Miranda* [?]

Commonwealth's Brief at 4.

We begin our analysis of these claims by noting our well-established standard of review:

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty [it] is to determine if

the suppression court properly applied the law to the facts.

*Commonwealth v. Baez*, 21 A.3d 1280, 1282 (Pa.Super.2011) (citation omitted).

■ In its first issue, the Commonwealth contends that the trial court erred in suppressing Cohen's August 17, 2010 statement on the basis that Cohen did not indicate he understood his rights and, consequently, his waiver thereof was ineffective. Specifically, the trial court emphasized that after Detective Verna read Cohen his *Miranda* rights, Cohen refused to sign the form to confirm his understanding of those rights and, instead, simply sat in silence. Therefore, as the Commonwealth acknowledges, "the detective never received a finite, audible response to the question 'do you understand your *Miranda* rights.'" Commonwealth's Brief at 17 (citation to the record omitted). Nevertheless, the Commonwealth avers that Cohen's statements should not have been suppressed because Cohen

never indicated he was confused by the *Miranda* form, or that he failed to understand its meaning. Rather, [he] simply refused to sign his name to the form. Detective Verna explained it was common for suspects to not sign the written *Miranda* form. [Cohen] never indicated he did not want to speak with Detective Verna. [He] never requested counsel, or used the word 'attorney.' Instead, [Cohen] verbally executed a knowing, voluntary, and intelligent waiver of *Miranda*.

Commonwealth's Brief at 17.

■ We begin by noting that "[i]t is the Commonwealth's burden to establish whether [a defendant] knowingly and vol-

---

**3.** Cohen did not appeal the court's denial of his motion to suppress the physical evidence obtained from Ms. Montgomery's residence.

untarily waived his *Miranda* rights. In order to do so, the Commonwealth must demonstrate that the proper warnings were given, and that the accused manifested an understanding of these warnings." *Baez,* 21 A.3d at 1283 (quoting *Commonwealth v. Eichinger,* 591 Pa. 1, 915 A.2d 1122, 1135–36 (2007) (citation omitted)). The basic precepts regarding what constitutes a sufficient waiver of *Miranda* rights have been defined through a line of cases beginning with *Commonwealth v. Bussey,* 486 Pa. 221, 404 A.2d 1309, 1314 (1979) (plurality opinion). In that plurality opinion, our Supreme Court rejected the more lenient Federal constitutional rule that a defendant can *implicitly* waive his *Miranda* rights, instead holding that "an *explicit* waiver is a mandatory requirement." *Id.* at 1314 (emphasis added); *See also North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979) (holding that under Federal constitutional law, an implicit waiver of *Miranda* rights could be found where an accused expresses an understanding of his rights and gives a statement without expressly waiving the same). Our Supreme Court elaborated that an "explicit waiver" meant "an outward manifestation of a waiver such as an oral, written or physical manifestation." *Id.* at 1314 n. 11.

In *Commonwealth v. Hughes,* 536 Pa. 355, 639 A.2d 763 (1994), the Court applied *Bussey* without acknowledging its limited precedential value as a plurality decision. There, the Court found that the defendant had "explicitly waived" his *Miranda* rights by "clearly and unequivocally" indicating that he understood his rights and then responding to the officer's questions. *Id.* at 770. In other words, the defendant's conduct "clearly manifested an intent to

waive his rights." *Id.* Similarly, in *Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831 (2003), our Supreme Court held that the defendant's twice stating he understood his *Miranda* rights after they were read to him, and answering questions immediately thereafter, sufficiently "manifested the intent to waive his rights." [4] *Id.* at 844 n. 13. Finally, in *Baez,* this Court relied on all of the above-cited Supreme Court cases in concluding that the defendant had sufficiently manifested his intent to waive his *Miranda* rights where those rights were read to him, he indicated one time that he understood them, and then he answered the questions asked by police. *Baez,* 21 A.3d at 1286.

In the instant case, the trial court interpreted the above-cited decisions as mandating the suppression of Cohen's August 17, 2010 statement because Cohen did not expressly state that he understood his *Miranda* rights, and/or sign Detective Verna's form indicating the same. We disagree with the court's reading of these decisions. Recently, in *Commonwealth v. Hill,* 42 A.3d 1085 (Pa.Super.2012), this Court stated:

> The determination [of] whether an accused has knowingly and voluntarily waived his constitutional rights depends on the facts of each particular case. *Fare v. Michael C.,* 442 U.S. 707, 724–25, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979). These circumstances include the background, experience, and conduct of the accused. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), *overruled in part on other grounds, Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The government has the burden to prove, by a preponderance of the

---

**4.** Notably, the *Bomar* Court "disavowed its holding in *Bussey* and stated that because the 'three-Justice plurality . . . was not a majority opinion, it is not binding precedent.' " *Baez,* 21 A.3d at 1285 (quoting *Bomar,* 826 A.2d at 844 n. 13).

evidence, that the waiver was "the product of a free and deliberate choice rather than intimidation, coercion, or deception" and was "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986); *Colorado v. Connelly*, 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *United States v. Winther*, 2011 WL 5837083, at *4 (E.D.Pa. November 18, 2011). "Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude" that the constitutional rights to counsel have been waived. *Moran*, 475 U.S. at 421, 106 S.Ct. 1135 [89 L.Ed.2d 410] (quoting *Fare*, 442 U.S. at 725, 99 S.Ct. 2560 [61 L.Ed.2d 197] ). With respect to constitutional rights, "courts should indulge every reasonable presumption against waiver." *Brewer [v. Williams* ], 430 U.S. [387], 404, 97 S.Ct. 1232 [51 L.Ed.2d 424 (1977) ] (quoting *Johnson [v. Zerbst* ], 304 U.S. [458] 464, 58 S.Ct. 1019 [82 L.Ed. 1461 (1938) ] ).

*Hill*, 42 A.3d at 1091–1092.

Instantly, assessing the totality of the circumstances convinces us that Cohen manifested an understanding of his *Miranda* rights. In regard to his background and experience, Cohen "is no stranger to the criminal justice system. In Lebanon County alone, he was charged [with unrelated offenses] twice before the facts of this case unfolded." Trial Court Opinion and Order (T.C.O.O.), 7/22/11, at 21 (unnumbered pages). In addition to his prior experience with the criminal justice system, Cohen's behavior during the August 17, 2010 interrogation demonstrated his recognition and invocation of his rights. Namely, he refused to answer when Detective Verna asked him if he understood his *Miranda* rights, thus acknowledging his right to remain silent. Furthermore, Cohen ended the interrogation when he no longer wished to talk to the detectives. Therefore, Cohen's conduct manifested his understanding of his *Miranda* rights, and he validly waived the same by freely talking to Detective Verna.

Before leaving this issue, we emphasize that the best practice is for police officers to obtain written and/or oral confirmation that a defendant understands his *Miranda* rights prior to interrogating him. Nevertheless, in a case such as this where the defendant was read his *Miranda* rights, and the totality of the circumstances manifested his understanding and intent to waive those rights, we decline to suppress his statement simply because the actual words, "I understand," were not spoken. Accordingly, we are compelled to conclude that the trial court erred in suppressing Cohen's August 17, 2010 statement, and we reverse that portion of its July 22, 2011 order.

■ However, we agree with the trial court that the statement Cohen made to Detective Verna on September 16, 2010, must be suppressed. The Commonwealth concedes that prior to questioning Cohen, the detective did not inform him of his *Miranda* rights, but simply told Cohen "he was not required to say anything," and then asked him about the property recovered from Ms. Montgomery's apartment. Commonwealth's Brief at 18–19 (citation to the record omitted). Incomplete warnings such as these are not effective. *See Florida v. Powell,* —— U.S. ——, 130 S.Ct. 1195, 1204, 175 L.Ed.2d 1009 (2010) (stating it is " 'an absolute prerequisite to interrogation,' that an individual held for questioning 'must be clearly informed that he has the right to consult with a lawyer and to

have the lawyer with him during interrogation' ").

■ We note, however, that the Commonwealth impliedly argues that because Cohen was given *Miranda* warnings on at least two prior occasions, those warnings can be "incorporated by reference" to his September 16, 2010 interview.[5] *See* T.C.O.O. at 14 (characterizing the Commonwealth's argument as contending "that prior *Miranda* warnings can simply be 'incorporated by reference' " based on prior instances of those warnings being provided). While it is true that our Supreme Court "has never created a prophylactic rule that a suspect must be rewarned of his constitutional rights every time a custodial interrogation is renewed," the Court has mandated that "repeated warnings are necessary where the initial warnings have become stale or remote." *Commonwealth v. Scott*, 561 Pa. 617, 752 A.2d 871, 875 (2000) (citation omitted). In determining if additional *Miranda* warnings are required, "we view the totality of the circumstances in each case." *Id.* (citation omitted). The *Scott* Court declared that,

[f]actors . . . relevant to such an inquiry are:

[T]he length of time between the warnings and the challenged interrogation, whether the interrogation was conducted at the same place where the warnings were given, whether the officer who gave the warnings also conducted the questioning, and whether the statements obtained are materially different from other statements that may have been made at the time of the warnings.

[*Commonwealth v. Bennett*, 445 Pa. 8, 282 A.2d 276, 279 (1971) ]. These criteria, though not mandatory, guide us in determining whether there has been a "clear continuity of interrogation." *See Commonwealth v. Hoss*, 445 Pa. 98, 112, 283 A.2d 58, 66 (1971).

This Court has had ample opportunity to apply the *Bennett* factors in order to delineate what constitutes a "clear continuity of interrogation." *See Commonwealth v. Jones*, 478 Pa. 172, 178, 386 A.2d 495, 498 (1978) (warnings not stale when incriminating statement given three hours after warnings, warnings were given in the same room and same warning officers conducted the interview); *Commonwealth v. Gray*, 473 Pa. 424, 432, 374 A.2d 1285, 1289 (1977) (warnings not stale when given a little over two hours before incriminating statement, warnings were given in the same room and different officers conducted the interview); *Commonwealth v. Bennett*, 445 Pa. 8, 282 A.2d 276, 280 (1971) (warnings not stale where given just under five hours before interrogation, defendant was moved a distance of a few miles, and the statement was given to an officer other than the warning officer); *Commonwealth v. Ferguson*, 444 Pa. 478, 481, 282 A.2d 378, 379–80 (1971) (rewarning not necessary when warnings were given seven and one-half hours and three hours before interrogation and in the same room, but while different officer conducted the interrogation with warning officer present). *But see Commonwealth v. Wideman*,

5. The "two occasions" to which the Commonwealth refers are the August 17, 2010 interrogation by Detective Verna, and warnings given at the time of Appellant's prior arrest for unrelated charges. It is not apparent when Appellant was arrested for those unrelated offenses, but clearly it was prior to his August 17, 2010 interview. Thus, based on our discussion, *infra*, concluding that the August 17, 2010 *Miranda* warnings were too remote to be "incorporated by reference" to Cohen's September 16, 2010 interview, the same is necessarily true for any warnings he received during his prior arrest.

460 Pa. 699, 708–09, 334 A.2d 594, 599 (1975) (warnings were stale when given twelve hours before incriminating statement was elicited, defendant was moved to different rooms and the interview was conducted by different officers); *Commonwealth v. Riggins*, 451 Pa. 519, 527–28, 304 A.2d 473, 478 (1973) (defendant should have been rewarned of his constitutional rights where statement was elicited seventeen sleepless hours after initial warnings were given, warnings were given in car and confession was given in a room in the police administration building and different officers gave the warning).

*Scott*, 752 A.2d at 875–876.

In the present case, the two interrogations of Cohen both occurred in the same location, *i.e.* the Lebanon County Prison, and Detective Verna was present at each. However, there was no "clear continuity" between the two interviews. Most notably, the September 16, 2010 interrogation occurred *thirty-one days* after Cohen was last informed of his *Miranda* rights on August 17, 2010. Our Supreme Court's decisions in *Wideman* and *Riggins* held that time lapses of twelve and seventeen hours, respectively, necessitated the renewal of *Miranda* warnings. Clearly a thirty-one day lapse in time between warnings and an interrogation does so, as well.

Moreover, at the time Cohen was provided his *Miranda* warnings, Detective Verna asked him about the specific burglaries the detective was investigating. However, during the September 16, 2010 questioning, the detective interrogated Cohen about the items recovered from Ms. Montgomery's home. Therefore, we presume that the statements given by Cohen during the two interrogations were "materially different." *Bennett*, 282 A.2d at 279. Consequently, assessing the *Bennett* factors convinces us that the *Miranda* warn-ings given on August 17, 2010 were stale and new warnings were required prior to the September 16, 2010 interrogation of Cohen. As no such warnings were provided, the court properly suppressed Cohen's statement given on September 16, 2010.

Order affirmed in part, reversed in part. Remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.

President Judge STEVENS concurs in the result.