J-S61019-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KAREEM HOGAN | : | |
| | : | |
| Appellant | : | No. 1051 EDA 2017 |

Appeal from the PCRA Order March 2, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003016-2012

BEFORE:   LAZARUS, J., RANSOM, J., and PLATT, J.*

MEMORANDUM BY RANSOM, J.:                    **FILED NOVEMBER 28, 2017**

Appellant Kareem Hogan appeals from the order entered March 2, 2017, denying his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

The pertinent facts and procedural history, as gleaned from our review of the certified record, are as follows:  On October 27, 2011, police responded to a radio call and found the victim lying on the sidewalk of Westmoreland Street in Philadelphia.  They observed that the victim had suffered multiple gunshot wounds, and they did not observe any weapon on or near his person.  The victim was transported to a nearby hospital where he died.

_____
*   Retired Senior Judge assigned to the Superior Court.

The victim's shooting was witnessed by several people and, following their investigation, the police arrested Appellant and Brandon Sanabria ("Sanabria"). At Appellant's subsequent jury trial,[1] many of the witnesses gave testimony that was inconsistent with statements they had given to the police. We previously described these inconsistencies as follows:

> On November 25, 2011, Johnny Walker gave a statement to police. Walker explained that he was walking in the area of Front and Westmoreland Streets when he heard yelling and saw [Appellant] and [Sanabria]. [The victim] and a friend were walking from Waterloo and Westmoreland Streets towards Hope Street. [The victim] said "there's that bitch ass nigga right there." [Appellant] responded "[o]h, he [is] pulling." [Appellant] and Sanabria pulled out their guns and started shooting at [the victim. The victim] said, "[t]hat's all your bitch ass nigga got?" [The victim] walked to Waterloo and Westmoreland Street and then fell on the sidewalk.

> The day after the murder, Sanabria showed Walker a silver gun and asked if he wanted to buy it. Walker refused. Walker also told the police that he always saw [Appellant] carrying a black .40-caliber firearm on his hip. At trial, Walker recanted, denying that [he] gave the answers in his statement.

> On November 26, 2011, Frederick Miller, [Appellant's] [stepfather], gave a statement to police. In the statement, Miller explained that on the night of the murder, he was at home at 3335 Waterloo Street when he heard about seven gunshots. [Appellant] and Sanabria ran into the house and put guns on the floor. Miller told [Appellant] and Sanabria to leave and they did. Monte Hogan, Miller's stepson, put the guns in a bag in the

---

[1] Sanabria, a juvenile at the time of the murder, entered a negotiated guilty plea to third-degree murder, conspiracy, and a firearm violation on June 20, 2013. He was sentenced to an aggregate term of twenty-two and one-half to forty-five years of imprisonment. *See Commonwealth v. Sanabria*, CP-51-CR-0003017-2012.

corner. About two hours later, Sanabria called and informed Monte Hogan that he was sending a woman to retrieve the guns. A woman called Goida arrived and took the guns to Sanabria's house.

The next day, [Appellant] came to Miller's house and told him that he had been walking with Sanabria on Westmoreland Street when he saw [the victim] walking with Edwin Laboy and Onehida Rodriguez. [The victim] told [Appellant], "there go those bitch niggas from Waterloo." [The victim] was trying to reach for a weapon, so [Appellant] pulled out his .40-caliber and tried to shoot, but it jammed. Sanabria then pulled out his .25-caliber firearm and shot [the victim]. [Appellant] explained that the reason they were arguing with [the victim] was that Yaniz Estrada had a conflict with people from Mascher Street about selling PCP on Waterloo Street. [Appellant] and Sanabria didn't want Estrada selling PCP on the block because they sold PCP on Mascher Street.

At trial, although Miller confirmed that himself, [the victim], and Estrada sold PCP in the area of Waterloo and Westmoreland Streets, he denied that [Appellant] and Sanabria ran into hi[s] home with guns after the murder. Instead, he said that on the night of the murder after he heard gunshots he saw a group of people from Mascher and Mutter Streets yelling and running around.

On November 26, 2011, Rafael Torres-Burgos gave a statement to police describing that on the night of the murder he was walking down Westmoreland Street to pick up his girlfriend when he heard arguing and yelling. Torres-Burgos heard about three gunshots and saw [Appellant] who was holding a gun and Sanabria running from Waterloo Street towards Howard and Hope Street.

At trial, Torres-Burgos denied seeing [Appellant] and Sanabria shoot [the victim]. Torres-Burgos testified that he was in his home when he heard two to three gunshots. Torres-Burgos ran outside and saw [the victim] laying on the ground and two people he did not recognize running away.

On November 27, 2011, Yaniz Estrada gave a statement to police. In the statement, Estrada explained that about two or three days before [the victim's] murder she was on the 3300 block of Waterloo Street when she was approached by [Appellant] and Sanabria. They asked Estrada if she was selling

- 3 -

drugs and told her that she needed to stop selling. Estrada told them she was not selling drugs and they walked away. On the day of the murder, at about 5:00 p.m., Estrada arrived on the 3300 block of Waterloo Street. While she was in the area she said hello to [the victim] and then went home.

At trial, Estrada confirmed that she was on the block on the day of the murder and said hello to [the victim]. Estrada denied that two days before the murder, [Appellant] and Sanabria had approached her. She also denied selling drugs at the time of the murder.

On November 27, 2011, Edwin Laboy gave a statement to police. Laboy stated that on the night of the murder when it was just starting to get dark, Laboy ran into [the victim] near Westmoreland and Waterloo Streets. As he was talking to [the victim, Appellant] and Sanabria approached them. Laboy started to walk away and heard four or five gunshots. Laboy saw [Appellant] and Sanabria run away. Laboy explained that [Appellant] and his friends had been selling PCP on the block and wanted rent money from Estrada, who was working with Miller and [the victim].

At trial, Laboy confirmed that he had seen [the victim] near Westmoreland and Waterloo Streets shortly before [the victim] was murdered, but testified that he was on a different street when he heard about four or five gunshots. Laboy walked back to Westmoreland and Waterloo Streets and went to [the victim] who was shot and dying on the street. Laboy explained that a few days before [the victim's] murder, . . . there was an argument because [the victim], Miller, and Estrada wanted to sell PCP on the block but [Appellant] did not want them to sell PCP without paying rent for it.

*Commonwealth v. Hogan*, 121 A.3d 1128, *3-6 (Pa. Super. 2015) (unpublished memorandum) (footnote and citations omitted).

Appellant did not testify. On July 1, 2013, a jury convicted him of third-degree murder, conspiracy, and a firearm violation. On August 27, 2013, the trial court sentenced him to an aggregate term of twenty-six to fifty-two years of imprisonment. Appellant timely appealed to this Court; we

- 4 -

affirmed his judgment of sentence, and our Supreme Court denied his petition for allocatur. *Hogan*, *supra*, *appeal denied*, 124 A.3d 309 (Pa. 2015).

On November 10, 2015, Appellant timely and *pro se* filed a PCRA petition. The PCRA court appointed counsel, who filed an amended petition on November 16, 2016. On January 17, 2017, the Commonwealth filed a motion to dismiss. On February 2, 2017 the PCRA court issued Pa.R.Crim.P. 907 notice of its intent to dismiss the petition without a hearing. Appellant did not file a response. By order entered March 2, 2017, the PCRA court dismissed Appellant's PCRA petition. This timely appeal follows. Both Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues:

I. Was Trial Counsel [i]neffective for failing to request a limiting instruction regarding evidence of [Appellant's] involvement in drug-dealing?

II. Was Trial Counsel [i]neffective for failing to object and request a mistrial after the prosecutor elicited testimony that a portion of Edwin Laboy's statement had been redacted pursuant to a defense objection?

Appellant's Brief at 3.

When examining a post-conviction court's grant or denial of relief, we are limited to determining whether the court's findings were supported by the record and whether the court's order is otherwise free of legal error. *Commonwealth v. Quaranibal*, 763 A.2d 941, 942 (Pa. Super. 2000). We will not disturb findings that are supported in the record. *Id.* The PCRA

provides no absolute right to a hearing, and the post-conviction court may elect to dismiss a petition after thoroughly reviewing the claims presented and determining that they are utterly without support in the record. *Id.*

Because Appellant's claims challenge the stewardship of trial counsel, we apply the following principles. The law presumes counsel has rendered effective assistance. *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010). The burden of demonstrating ineffectiveness rests on Appellant. *Id.* To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different." *Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. 2003). Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim. *Commonwealth v. Jones*, 811 A.2d 994, 1002 (Pa. 2002).

Appellant first claims that trial counsel was ineffective for failing to ask for a limiting instruction regarding evidence of Appellant's drug-dealing activities. According to Appellant, "[w]hile such evidence was arguably admissible to establish the motive for the murder, trial counsel had no reasonable basis for failing to request an instruction informing [the] jury that such evidence could only be considered for that limited purpose."

Appellant's Brief at 8. Appellant asserts that trial counsel's "failure to request such an instruction permitted the jury to consider this highly prejudicial evidence for any possible reason, including the inference that [he] was a bad person prone to illegal activity. As a result, but for counsel's omission, the outcome of the trial might have been different." *Id.* at 8-9.

The PCRA court found no merit to this claim, and explained as follows:

> This claim warrants no relief. As the Commonwealth points out, evidence of [Appellant's] drug dealing was properly admitted as it was part of the chain of events leading up to the murder. *Commonwealth v. Petroll*, 696 A.2d 817 (Pa. Super. 1997); *see also* Pa.R.E. 404(b). Further, [Appellant] offered that he was involved in drugs as a motive for the [victim] to try to kill him. During closing arguments, trial counsel asserted that the [victim's] motive to shoot [Appellant] was to overtake his drug territory. This argument supported [Appellant's] self-defense claim.
>
> Moreover, [Appellant] cannot show that had an instruction regarding drug activity been requested and given to the jury, there was a reasonable probability that the outcome of the trial would have been different. In a similar claim in *Commonwealth v. Cox*, our Supreme Court denied relief and held that because of the overwhelming evidence against the defendant, including eyewitness testimony and a confession, it was not reasonably probable that a cautionary instruction about drugs would have altered the verdict. 983 A.2d 666 (Pa. 2009). Like *Cox*, there were multiple eyewitnesses to the instant murder, including Frederick Miller ([Appellant's] stepfather), who saw [Appellant] and Sanabria run into his house immediately after the shooting and dispose of the guns. Further, [Appellant] confessed to Miller and told him that the shooting was over a drug turf war. [Appellant's] flight also demonstrated consciousness of guilt.

PCRA Court Opinion, 3/2/17, at 6-7 (footnotes omitted).

In general, evidence of uncharged crimes or prior bad acts is inadmissible to demonstrate a defendant's propensity to commit the crime charged. **Commonwealth v. Shull**, 148 A.3d 820, 845 (Pa. Super. 2016). Evidence of other crimes may be admitted, however, when such evidence is part of the history of the case and forms part of the natural development of the facts. **Commonwealth v. Richard**, 150 A.3d 504, 510 (Pa. Super. 2016).

Our careful review of the record supports the PCRA court's conclusions that evidence of drug dealing was properly admitted and that Appellant cannot establish prejudice given the overwhelming evidence of guilt. At trial, evidence of drug dealing was pervasive—as to Appellant, the victim, and even most of the witnesses whose trial testimony was summarized above. The evidence regarding Appellant's involvement in drug dealing was admissible to prove that he had a drug-related motive to kill the victim, and as part of the sequence of events that formed the natural development of the events. **See, e.g.**, **Commonwealth v. Malloy**, 856 A.2d 767, 775-76 (Pa. 2004) (holding evidence of the defendant's drug activity admissible to demonstrate motive for killing the victim). Given these circumstances, Appellant's counsel cannot be found ineffective for failing to request the limiting instruction. **See Commonwealth v. Loner**, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*) (explaining that counsel cannot be deemed ineffective for failing to pursue a meritless claim).

In his remaining claim, Appellant asserts that trial counsel was ineffective for failing to object or request a mistrial after the Commonwealth interrupted the direct testimony of a police detective regarding a statement made by Walker. *See* Appellant's Brief at 9.[2]

As noted above, Walker's trial testimony differed from the statement he originally gave to police. On direct examination, Walker was extensively asked about the contents of his prior statement by the prosecutor. On cross-examination, defense counsel also questioned Appellant regarding the contents of his prior statement. Later in the Commonwealth's case, the Commonwealth called Detective Phillip Nordo, who read, pursuant to Pa.R.E. 803.1(1), Walker's prior inconsistent statement into the record. The prosecutor directed Detective Nordo to read both the question posed and Walker's response. During this reading, the following occurred:

> **Question:** Do you have any other information about this murder investigation.
>
> **Answer –**
>
> **Q** [**BY THE PROSECUTOR**:] I'm sorry, Detective. I don't mean to interrupt. There was a defense motion for one part. I just want to make sure.
>
> **THE COURT**: You can approach him.

---

[2] Our review of the trial transcript confirms the PCRA court's statement that Appellant mistakenly asserts that this incident involved Laboy's statement. *See* PCRA Court Opinion, 3/2/17, at 7 n.7.

[**THE PROSECUTOR**]: Your Honor, pursuant to the defense motion, I just redacted one line.

**THE COURT**: All right. You may proceed.

**THE WITNESS**: The question was: Do you have any other information about this murder investigation?

**Answer**: The day after the shooting, I talked to [Appellant's] stepfather Fred. After I talked to Fred, I was in George's store, and [Sanabria] came up to me and showed me a silver gun and asked me if I wanted to buy it for $200. I told him no. I always see [Appellant] carrying a black .40 on his hip.

N.T., 6/27/13, at 10-11.

As explained by the trial court, "[t]he redacted line, which references what Miller had told Walker about how the murder transpired, was redacted after this Court found it [to be] inadmissible hearsay." PCRA Court Opinion, 3/2/17, at 7; *see* N.T., 6/25/13, at 149-153.

Appellant asserts that trial counsel had no reasonable basis for failing to object and move for a mistrial because "the testimony improperly notified the jury of the redaction and created the impression that [he] was hiding something from the jury." Appellant's Brief at 7. According to Appellant, the prosecutor's comment was "clearly improper since it made it abundantly clear that a redaction had occurred." Appellant's Brief at 9 (citing ***Gray v. Maryland***, 523 U.S. 185 (1998)).

The PCRA court found no merit to Appellant's claim, and again, concluded that Appellant could not demonstrate prejudice:

As the record clearly reflects, the Commonwealth was only indicating to this Court why she interrupted the witness and why she wished to approach the witness stand. Further trial counsel

- 10 -

had a reasonable basis for not objecting, as an objection would have underscored that a line in the statement might have been detrimental to [Appellant].

Appellant also cannot demonstrate prejudice. The contents of the redacted line were never revealed to the jury. Moreover, with several eyewitnesses to the murder, including a confession to Miller, it is unlikely that had trial counsel objected, there was a reasonable probability that the outcome of the trial would have been different. Finally, because a mistrial is an extreme remedy, there is no evidence that had trial counsel requested a mistrial, this Court would have granted one.

PCRA Court Opinion, 3/2/17, at 8 (citations omitted).

Once again, our review of the certified record supports the PCRA court's conclusions. Initially, we note that Appellant's reliance upon **Gray**, **supra**, is inapposite as that case concerns an obvious reference to a redacted statement by a non-testifying co-defendant pursuant to **Bruton v. United States**, 391 U.S. 123 (1968). Thus, the determination that such references are so prejudicial that limiting instructions could not cure has no application in Appellant's case.

Moreover, as this Court has stated:

In criminal trials, the declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interests but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice. Our review of the

resulting order is constrained to determining whether the court abused its discretion.

***Commonwealth v. Hogentogler***, 53 A.3d 886, 877-78 (Pa. Super. 2012), *appeal denied*, 69 A.3d 600 (Pa. 2013) (citations omitted).  Here, the PCRA court states that it would not have granted a motion for mistrial had trial counsel so moved.  Clearly, it would be in its discretion to do so.

Finally, Appellant's assertion that the jury could have inferred from the prosecutor's comments that he was "trying to hide something" is refuted by our review of the trial transcripts.  As noted above, both the prosecutor and defense counsel questioned Appellant regarding the contents of his prior statement.  Indeed, trial counsel's failure to object to the prosecutor's actions actually inured to Appellant's benefit, as it assured that the trial court's prior evidentiary ruling was adhered to by Detective Nordo.

Thus, for all these reasons, Appellant's second claim of ineffectiveness fails.

Order affirmed.  Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/28/2017

- 12 -