J-S28015-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
THOMAS BOYER :
:
Appellant : No. 2039 MDA 2019

Appeal from the Judgment of Sentence Entered October 24, 2018
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0003791-2016

BEFORE: BOWES, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.: **FILED: AUGUST 31, 2020**

Thomas Earl Boyer appeals from the October 24, 2018 judgment of sentence of life imprisonment, which was imposed following his convictions of first-degree murder and possession of an instrument of crime ("PIC"). We affirm.

The following facts, which we glean from the trial transcript, are relevant to our review. On September 8, 2015, Luisa Breban noticed that her roommate Ted McCarty had not been home in several days. N.T. Jury Trial Vol. I, 10/22/18, at 63. Luisa, who was vision impaired, was assisted in some everyday tasks by her friend Monica Mas Ramos. On this day, Monica arrived at Luisa's apartment to retrieve Luisa's laundry. *Id*. Monica immediately noticed a strange and putrid smell in the apartment and music coming from

Mr. McCarty's room. After knocking, she opened the door to Mr. McCarty's room, where she found his lifeless body covered in blood. *Id*. at 142.

Monica started screaming and ran to the porch to call 911. Neighbors heard her and gathered on the porch. Monica, shaken by what she had witnessed, recalled that she handed the phone to a young man, later identified as Appellant, who placed the emergency call.

Detective Jarrett Ferrari was placed in charge of the investigation. Initially, due to the condition of the victim's body, it was unclear whether this was a homicide or a death from natural causes. Just days after the murder, Detective Ferrari met with Appellant, who was sitting with others on his porch near the victim's apartment. Appellant told him that he had seen and spoken briefly to Mr. McCarty at around ten o'clock on the Friday evening before the body was found. Shortly thereafter, autopsy results revealed that Mr. McCarty had been stabbed seventy-five times, and a homicide investigation officially began.

Police had several interactions with Appellant after the homicide. On September 18, 2015, Detective Ferrari interviewed him. At that time, Appellant mentioned that he knew how much money Mr. McCarty made each month, and that he saw Mr. McCarty with money on the Friday before he was found dead. N.T. Jury Trial Vol. II, 3/23/18, at 382-83. He was also interviewed by Sergeant Todd Witmer of the Lower Paxton Police Department on October 7, 2015. Appellant told Sergeant Witmer that he "heard [Mr.

McCarty] was naked as a butterball turkey and stabbed and there was blood everywhere." N.T. Jury Trial Vol. III, 3/24/18, at 469. In May 2016, Appellant contacted Detective Ferrari to discuss the murder. He gave an interview in which he confessed to stabbing Mr. McCarty "endlessly" after he made sexual overtures towards him. N.T. Jury Trial Vol. III, 3/24/18, at 478.

Appellant was charged with criminal homicide and PIC. He filed a motion to suppress his inculpatory May 2016 statement to police, claiming that it was involuntary. The motion was denied after a hearing on August 6, 2018. A jury trial commenced on October 22, 2018, resulting in convictions for first-degree murder and PIC. Appellant was sentenced that same day to life imprisonment.

On November 2, 2018, Appellant filed a timely post-sentence motion seeking a new trial or arrest of judgment, which was denied by the trial court on November 19, 2018. Appellant timely appealed and ultimately complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[1] The trial court issued its Pa.R.A.P. 1925(a) opinion, and the matter is ripe for our review.

Appellant presents four issues for our consideration:

I.      Whether the evidence presented by the [C]ommonwealth at trial was not sufficient to prove first[-]degree murder?

---

[1] Appellant was granted permission to file a Rule 1925(b) concise statement of errors complained of on appeal *nunc pro tunc*.

II. Whether the trial court erred when it denied Appellant's post-sentence motion for a new trial based on the weight of the evidence?

III. Whether the trial court abused its discretion when it denied Appellant's motion to suppress and admitted Appellant's statements?

IV. Whether the prosecutor engaged in professional misconduct by misstating the elements of third[-]degree murder?

Appellant's brief at 8.[2]

We begin our analysis with Appellant's sufficiency issue. Our standard of review for a challenge to the sufficiency of the evidence is well-settled: "In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all the reasonable inferences derived therefrom, viewed in favor of the Commonwealth as verdict winner, supports the jury's finding of all of the elements of the offense beyond a reasonable doubt. ***Commonwealth v. Le***, 208 A.3d 960, 969 (Pa. 2019).

> In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and

---

[2] The Commonwealth did not file a brief in this matter.

the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Gause*, 164 A.3d 532, 540-41 (Pa.Super. 2017) (citations and quotation marks omitted).

Appellant challenges the sufficiency of the evidence only for his first-degree murder conviction. A person is guilty of first-degree murder if he intentionally kills another human being. 18 Pa.C.S. § 2502(a) and (d). In order to prove first-degree murder, the Commonwealth must establish: "that a human being was unlawfully killed; the defendant was responsible for the killing; and the defendant acted with malice and a specific intent to kill." *Commonwealth v. Houser*, 18 A.3d 1128, 1133 (Pa. 2011).

Appellant contends that there was insufficient physical evidence linking him to the scene of the crime, and hence, his first-degree murder conviction is infirm. In support thereof, Appellant argues that the police investigation had stalled prior to his interview due to a lack of forensic evidence.

Preliminarily, we note that physical evidence linking the accused to the scene of the crime is not an element of the crime of first-degree murder. Thus, Appellant's sole sufficiency argument does not implicate the sufficiency of the evidence at all, and is unavailing. Furthermore, the evidence supports the conviction. Appellant confessed to the murder, providing specific details of the crime that would be known only to police and the perpetrator. In addition, he admitted that he obtained a knife from the kitchen on his way to the victim's bedroom, and that he used it to stab the victim repeatedly. Such

evidence suggests that he specifically intended to kill the victim when he went into the bedroom, and that he acted with malice. *See Commonwealth v. Thomas*, 54 A.3d 332 (Pa. 2012) (holding that specific intent to kill, as well as malice, can be inferred from the use of a deadly weapon upon a vital part of the victim's body.). Here, the evidence, viewed in the light most favorable to the Commonwealth, supports the jury's finding that Appellant intentionally murdered the victim. No relief is due.

Appellant next challenges the weight of the evidence. Our standard of review for a challenge to the weight of the evidence is well-settled:

> When we review a weight-of-the-evidence challenge, we do not actually examine the underlying question; instead, we examine the trial court's exercise of discretion in resolving the challenge. This type of review is necessitated by the fact that the trial judge heard and saw the evidence presented. Simply put, [o]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice. A new trial is warranted in this context only when the verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.
>
> Of equal importance is the precept that, the finder of fact . . . exclusively weighs the evidence, assesses the credibility of witnesses, and may choose to believe all, part, or none of the evidence.

*Commonwealth v. Rayner*, 153 A.3d 1049, 1056 (Pa.Super. 2016) (quotation marks and citation omitted).

Appellant argues that the jury accorded too much weight to his coerced confession. He claims further that the true perpetrators of the murder were

more likely the persons who accompanied the victim to a bar that Friday evening. Appellant points to his cooperation with law enforcement as evidencing his good will in assisting with the case and argues that the jury did not afford it proper weight. Finally, Appellant argues that, if he was found culpable at all, a conviction for third-degree murder would have been more appropriate than the conviction of first-degree murder, as he was agitated by the victim's sexual advances.

Appellant's weight of the evidence argument was preserved in a timely post-sentence motion. Nonetheless, it affords him no relief. As the trial court correctly noted, the jury was free to weigh the evidence, assess the credibility of the witnesses, and choose to believe all, part, or none of the evidence presented at trial. *Commonwealth v. Rayner*, 153 A.3d 1049, 1056 (Pa.Super. 2016). With regard to the evidence, the trial court observed the following:

> The fact that the Commonwealth did not investigate the individuals that were with the Victim at the bar the night he was murdered or the fact that law enforcement did not confirm the Victim's presence at the bar does not shift the weight of the evidence in favor of the Appellant. Neither does the argument that the jury failed to consider the false confession by the Appellant after numerous interrogations by law enforcement that lasted for hours.

Trial Court Opinion, 2/18/20, at 9. The trial court concluded that none of Appellant's arguments was so compelling as to shift the weight of the evidence in his favor. *Id*. In denying Appellant's motion for a new trial on this basis,

the trial court found that jury's verdict did not shock its conscience. *Id*. at 10. We have no basis to disturb the trial court's finding.

Next Appellant challenges the court's denial of his motion to suppress the statements he made to police on May 17, 2016. The interview was recorded, and was played at the suppression hearing and at trial.

In suppression matters,

> Our review is limited to determining whether the record supports the findings of fact of the suppression court and whether the legal conclusions drawn from those findings are correct. . . . We are bound by the factual findings of the suppression court, which are supported by the record, but we are not bound by the suppression court's legal rulings, which we review *de novo.*

*Commonwealth v. James*, 69 A.3d 180, 186 (Pa. 2013) (citation omitted).

Appellant's central argument for the suppression of his confession is that it was not voluntary. *See* Appellant's brief at 17. He claims that he was coerced to confess during repeated police interrogations, and further, that he had not taken his medication prior to the confession. Viewing the totality of the circumstances surrounding his confession, Appellant contends that the interrogation deprived him of the ability to make a free and unconstrained decision to confess, citing *Commonwealth v. Nester*, 709 A.2d 879, 882 (Pa. 1998) (holding that the touchstone inquiry is whether the confession is voluntary, a determination made from the totality of the circumstances). Appellant directs our attention to the five-part test in *Nester* for determining voluntariness of a confession: (1) the duration and means of the interrogation; (2) the physical and psychological state of the accused; (3) the conditions

attendant to the detention; (4) the attitude of the interrogator; and (5) any and all other factors that could drain a person's ability to withstand suggestion and coercion. *Id*. He contends that, given his physical and psychological state and the duration of the interrogation, his confession was involuntary.

At the suppression hearing, the Commonwealth offered the testimony of Agent Ferrari.[3] He testified that in May 2016, Appellant was confined in the Dauphin County Prison on unrelated charges. Appellant completed a request form seeking permission to discuss details of Mr. McCarty's death with the officer in charge of the case, then-Detective Ferrari. The police obtained the necessary release to procure Appellant and put him in leg shackles and handcuffs for transport to the Harrisburg Police Station. During the ride, Appellant was given his *Miranda* warnings. N.T. Suppression Hearing, 8/6/18, at 11. Agent Ferrari testified that Appellant started talking in the car, and that "he wanted to talk." *Id*. at 13.

Appellant was taken to a conference room. His handcuffs were removed, he was given water and cigarettes, and a pre-interview was conducted for approximately one hour during which Appellant described how he had murdered Mr. McCarty. The detective asked him if he was "comfortable going on recording with this, if he's comfortable proceeding without an attorney, he's comfortable talking to us still[,]" and verified that he

---

[3] Detective Ferrari is referred to as Agent Ferrari in both the suppression and trial notes of testimony as he was then employed as a Special Agent for the Attorney General of Pennsylvania's Bureau of Criminal Investigation.

understood his **Miranda** warnings. **Id**. at 15. An official statement was then recorded.

The audiotape was played for the court.[4] Appellant indicated on the tape that he understood his **Miranda** rights, that he had a right to counsel, and that he was comfortable proceeding without an attorney. He then recounted the following. Several days before Ted McCarty's murder, Appellant was drinking and smoking marijuana on his porch when Mr. McCarty approached and asked if he could buy some marijuana. Appellant sold him some marijuana. The next day they drank beer and smoked marijuana together on Mr. McCarty's porch.

On Friday, September 4, 2015, Appellant was distraught over the fact that his girlfriend was not being a good mother to her daughter. It reminded Appellant of his own mother's failure to protect him from sexual abuse perpetrated by his older brothers. He went over to Mr. McCarty's apartment because he needed to talk to someone. Mr. McCarty led him to the bedroom, and on the way there, Appellant picked up a knife in the kitchen. They smoked marijuana and Mr. McCarty smoked crack cocaine. Mr. McCarty offered him $400 for sex, and Appellant refused the offer and attempted to leave. Mr. McCarty blocked the exit and began to make sexual advances towards

_____

[4] The Suppression Hearing transcript does not contain the substance of Appellant's recorded statement. However, a transcript of the statement was admitted as Commonwealth Exhibit 2. The suppression court summarized the contents of Appellant's May 2016 statement in its Memorandum Opinion, and we have borrowed heavily from its account in our pared-down version herein. **See** Memorandum Opinion, 3/25/20, at 3-4.

Appellant. Appellant, upset at the victim's advances, attacked the victim with the knife, stabbing him repeatedly.

Appellant told police that after stabbing Mr. McCarty, he went home, threw away his bloody clothes and knife, showered, and went to bed. He also mentioned that he took Seroquel to sleep, and Celexa for mood swings. Appellant maintained that he acted in self-defense and told the officers that he needed to tell someone because it was eating away at him. At the end of his statement, he added that Detective Ferrari and Sergeant Gautsch had treated him fairly, that he was not under the effects of drugs or alcohol, and that he had not been offered any promises or been threatened.

Agent Ferrari testified that, throughout the interview, Appellant was calm, cooperative, understood the questions asked, and did not appear to be under the influence of any drugs. Appellant stated that he understood his *Miranda* rights.

Appellant offered uncontradicted evidence at the suppression hearing that he had refused his Celexa and Seroquel for several days between April 28, 2016 and his interview on May 17, 2016, including the day before the interview. His medical record indicated that he took his prescribed medications upon his return from the interview.

As our Supreme Court recently reaffirmed in *Commonwealth v. Raghunandan Yandamuri*, 159 A.3d 503, 525 (Pa. 2017), "when a defendant alleges that his confession was involuntary, the inquiry becomes

'not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess.'" (quoting *Commonwealth v. Templin*, 795 A.2d 959, 966 (Pa. 2002)). Such a determination is made based on the totality of the circumstances surrounding the confession, and the burden is on the Commonwealth to prove that a defendant voluntarily confessed. *Nester*, *supra* at 882. Appellant contends that the court failed to recognize his mental health condition and his refusal to take his medications at the time of the May 17, 2016 statement. Appellant's brief at 19. He also points out that although Detective Ferrari indicated that he advised Appellant of his *Miranda* rights prior to the interview, he did not reiterate those rights on the recording or obtain a written waiver. *Id*.

The suppression court applied the totality of the circumstances test and concluded that Appellant's confession was voluntary. It found that Appellant initiated contact with then-detective Ferrari, expressly stated that he understood his *Miranda* rights, and voluntarily waived his right to counsel. Appellant was calm and cooperative, and stated that he had been treated fairly by the officers. Memorandum Opinion, 3/25/20, at 6. The fact that Appellant had been questioned before, and that he sometimes refused his medication during the days prior to the confession, "did not tip the scales in his favor" in the view of the suppression court. *Id*. In short, the suppression court found

no evidence that Appellant "was deprived of his ability to make a free and unconstrained decision to confess." *Id*.

The record reveals that evidence regarding Appellant's refusal to take his medications was presented at the suppression hearing, and thus, considered by the suppression court. While Appellant did not receive *Miranda* warnings again during the audiotaping, he acknowledged on the recording that he understood his rights and wished to proceed without counsel. While the best practice is to obtain either written or oral confirmation that a defendant understands his *Miranda* rights prior to interrogation, a written waiver is not required. *See Commonwealth v. Cohen*, 53 A.3d 882, 887 (Pa.Super. 2012) (reversing suppression of statement where the totality of the circumstances manifested defendant's understanding of his rights and his intent to waive them even though he did not sign a written waiver or vocalize his understanding).

The suppression court correctly recited and applied the law governing the voluntariness of confessions, and concluded that the Commonwealth proved by a preponderance of the evidence that, viewing the totality of the circumstances, Appellant's confession was voluntary. Its findings are amply supported by the record, and we have no basis to disturb its ruling.

Finally, Appellant alleges that he is entitled to a new trial because the prosecutor engaged in misconduct when he misstated the definition of third-degree murder in closing arguments. Our standard of review of an allegation

of prosecutorial misconduct is well-settled: "Comments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict." *Commonwealth v. Hutchinson*, 25 A.3d 277, 307 (Pa. 2011) (citations and quotation marks omitted).

The prosecutor initially referred to third-degree murder as "a reckless killing." N.T. Jury Trial Vol. III, 10/24/18, at 484. Just moments later, as the prosecutor was concluding, he reminded the jury: "Again, this argument that this is third-degree murder, that it is a reckless causation of death, almost a grossly negligent causation of death is offensive. It is offensive." *Id*. at 488.

At the conclusion of the Commonwealth's closing argument, the defense requested a sidebar. Even before the defense could voice its objection to the prosecutor's definition of third-degree murder as "reckless," the trial court anticipated the nature of the objection. The attorney for the Commonwealth initially maintained that he correctly stated the law, but retreated from that position when the trial court pointed out his misconception. The trial court assured the defense it would correctly instruct the jury on third-degree murder. *See id*. at 490 ("And I'm going to make it very clear what third-degree murder is and what the elements are, and it's not a reckless killing.").

Just moments later, the court began to charge the jury, first reminding the jurors that the speeches of the attorneys are not evidence. *See id*. at

493. Shortly thereafter, the trial court gave the following instruction defining third-degree murder in accordance with Pennsylvania Suggested Standard Jury Instructions (Crim.) § 15.2501A, providing in pertinent part:

> For murder of the third degree, a killing – a killing is with malice if the defendant's actions show his wanton and willful disregard of an unjustified and extremely high risk that his conduct will result in death or serious bodily injury to another. In this form of malice, the Commonwealth need not prove that the defendant specifically intended to kill another. The Commonwealth must prove, however, that he took action while consciously, that is, knowingly disregarding the most serious risk he was creating, and that, by his disregard of that risk, he demonstrated his extreme indifference to the value of human life.

N.T. Jury Trial Vol. III, 10/24/18, at 498.

In its opinion, the trial court pointed out that the definition of malice for purposes of third-degree murder includes language similar to recklessness. *See* Trial Court Opinion, 2/18/20, at 11 (quoting ***Commonwealth v. Pigg***, 391 A.2d 438,441 (Pa. 1990), defining malice for purposes of third-degree murder as "a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured"). It concluded that no prejudicial error resulted, and we concur in that assessment. Trial Court Opinion, 2/18/20, at 11. The court's instruction remedied any potential harm.

Appellant claims further that even though the correct definition was subsequently provided to the jury, the court never explicitly instructed the jury that the word "reckless" should not have been used in reference to third-degree murder, and hence, this was confusing. We note, however, that

- 15 -

Appellant did not request a curative instruction. Thus, any claim of error in this regard was not preserved. ***See Commonwealth v. Sandusky***, 77 A.3d 663, 670-71 (Pa.Super. 2013) (finding waiver where although defendant objected to specific conduct, he failed to request a curative instruction or mistrial); ***accord Commonwealth v. Manley***, 985 A.2d 256, 267 n.8 (Pa.Super. 2009). Furthermore, this alleged error was not articulated in Appellant's Rule 1925(b) concise statement of errors complained of on appeal, and thus, it is not preserved for appellate review on that basis as well. ***See*** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/31/2020