J-E01005 -22

2022 PA Super 104

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DESMOND SMITH | : | |
| | : | |
| Appellant | : | No. 983 EDA 2019 |

Appeal from the Judgment of Sentence Entered March 1, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010615-2016

BEFORE: PANELLA, P.J., BENDER, P.J.E., BOWES, J., LAZARUS, J., STABILE, J., KUNSELMAN, J., McLAUGHLIN, J., KING, J., McCAFFERY, J.

OPINION BY BENDER, P.J.E.: **FILED JUNE 6, 2022**

Appellant, Desmond Smith, appeals from the March 1, 2019 judgment of sentence of 20 to 40 years' incarceration, imposed after he was convicted by a jury of rape (18 Pa.C.S. § 3121), involuntary deviate sexual intercourse ("IDSI") (18 Pa.C.S. § 3123), and sexual assault (18 Pa.C.S. § 3124.1). On appeal, Appellant challenges the trial court's denial of his pre-trial motion to suppress, its rulings precluding him from presenting certain evidence, and the discretionary aspects of his sentence. After careful review, we vacate Appellant's judgment of sentence and remand for further proceedings.

The trial court summarized the facts of Appellant's case, as follows:

On September 27, 2015, Kevin Brown, the father of complainant [E.M.,] was killed by masked men who came to his house in Montgomery County. [E.M.], who was a witness to the events, gave a statement to detectives on September 28, 2015. In the course of that statement[,] she identified Appellant as one of the masked men who came to her family's home and was involved in the killing of her father. She also provided information about the

August 22, 2015, sexual assault which was the subject of the charges in the instant trial.

On October 2, 2015, at 6:49 a.m., Montgomery County [H]omicide [D]etective George Henry arrested Appellant at his home in Philadelphia, pursuant to an arrest warrant. The arrest arose from the September 27, 2015 homicide. Appellant waived his right to go before a judicial authority in Philadelphia and agreed to go straight to Montgomery County. He was taken to the Montgomery County Detective Bureau where he was intermittently interviewed by Detective Henry over the course of about 11 hours, starting with waiver of his *Miranda*[1] rights at 8:42 a.m. and concluding around 7:51 p.m.

During the course of questioning, Appellant was asked about the murder o[n] September 27, 2015, and about the August 22, 2015, sexual assault of [E.M]. Appellant initially denied involvement in either the murder or the sexual assault. By the end of the questioning, he confessed to both the murder and the sexual assault.

Appellant and [his] co-defendant[,] Naadir Abdul-Ali[,] were tried in Montgomery County on the homicide. Appellant presented an alibi defense, including phone[-]tracking data and video evidence, and was acquitted. Abdul-Ali was convicted. On the day of the verdicts in the homicide case, [E.M.] posted on Facebook criticizing the alibi testimony and the acquittal, expressing her anger[,] and insisting that Appellant was the person who killed her father and that he was wrongfully acquitted.

At trial in this case, the Commonwealth presented evidence that Abdul-Ali and [E.M.] were in a romantic relationship starting in the summer of 2015. During that time period[,] she met Appellant through Abdul-Ali, and was in his company three or four times. On August 22, 2015, Abdul-Ali became angry with [E.M]. While she was in the car with him[,] he became verbally and physically abusive.

They drove to a CVS parking lot, where Abdul-Ali continued to physically abuse and threaten [E.M.], including putting a gun to the back of her head and threatening to kill her. Abdul-Ali then ordered [E.M.] to perform oral sex on him in the car, during which

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

he made a video call to Appellant and displayed [E.M.] performing oral sex.

Abdul-Ali then drove [E.M.] to Appellant's house to force her to have sex with Appellant, despite her pleading and refusals. Once they arrived, he took her into Appellant's bedroom. Abdul-Ali ordered [E.M.] to disrobe and perform oral sex on him and Appellant, then to have vaginal and anal intercourse with Appellant, during which she was forced to have vaginal intercourse with Abdul-Ali. During the course of the incident[,] Abdul-Ali threatened [E.M.] with a gun and threatened or subjected her to physical force, including forcing the gun into her mouth.

Appellant gave a statement in which he admitted to having oral, attempted anal[,] and vaginal intercourse with [E.M.], asserting that she had been "acting like a victim[."]

Trial Court Opinion (TCO), 11/6/19, at 2-4 (citations to the record omitted).

Prior to Appellant's trial for the rape of E.M., he filed a motion to suppress his admissions to police regarding his sexual acts with E.M. Specifically, Appellant averred that the *Miranda* warnings, provided at the start of his interrogation, did not establish that he voluntarily waived his right to counsel and to remain silent regarding E.M.'s sexual-assault allegations. He reasoned that the *Miranda* warnings, given in the morning, were too far removed from his inculpatory statements provided in the evening. Appellant also averred that the warnings were insufficient because they only informed him of his rights in connection to the homicide charges but made no mention of E.M.'s sex-offense allegations. On December 20, 2017, a suppression hearing was conducted, at the close of which the court denied Appellant's motion to suppress his statements to police.

Also prior to trial, the Commonwealth filed a motion to preclude Appellant from admitting evidence that his inculpatory statements to police

were coerced and false. Specifically, Appellant wished to admit alibi evidence presented at his homicide trial — namely, surveillance video from SEPTA, and cell phone location data — to show that his confession to being at the scene of the murder was false. Appellant reasoned that the homicide alibi evidence would show "that if the homicide portion of the confession was patently unreliable, then the portions relating to the sexual assault [were] likewise questionable[,] since they were taken on the same day, during the same interrogation, by the same detectives." Appellant's Brief at 18. The trial court ultimately granted the Commonwealth's motion to preclude this evidence.

In a third, pre-trial evidentiary ruling, the court denied Appellant's request to be permitted "to present evidence, in the form of social media posts, that E.M. had a motive or bias to fabricate allegations against [Appellant] — or question E.M. regarding the same — at the trial in the matter *sub judice*." **Id.** The trial court denied Appellant's motion to admit this evidence.

Appellant and Abdul-Ali were tried together before a jury in December of 2018. At the close of trial, Appellant was convicted of the above-stated crimes. On March 1, 2019, the court sentenced him to two, consecutive terms of 10 to 20 years' incarceration for rape and IDSI. His offense of sexual assault merged for sentencing purposes. Thus, Appellant's aggregate sentence is 20 to 40 years' incarceration. Appellant filed a timely post-sentence motion, which the court denied. He thereafter filed a timely notice of appeal, and he also complied with the trial court's order to file a Pa.R.A.P.

1925(b) concise statement of errors complained of on appeal. The court filed a Rule 1925(a) opinion on November 6, 2019.

On January 6, 2021, a three-judge panel of this Court issued a memorandum decision vacating Appellant's judgment of sentence and remanding for a new trial. Specifically, the panel agreed with Appellant that the trial court abused its discretion by denying his pre-trial motion to suppress his statement to police. The Commonwealth filed a timely application for reargument *en banc*, which we granted. Accordingly, the panel's January 6, 2021 memorandum decision was withdrawn, and oral argument before this *en banc* panel was heard on April 20, 2022.

We now review the following four issues presented by Appellant, which we reorder for ease of disposition:

> [I.] Did the trial court err and/or abuse its discretion when it precluded evidence of a social media ([F]acebook) post made by [the] complainant in which she exhibited extreme animosity toward [A]ppellant and dissatisfaction with his acquittal in a prior criminal case involving complainant, as that evidence is relevant to complainant's bias, motive to fabricate allegations against defendant, and credibility generally?

> [II.] Did the trial court err and/or abuse its discretion when it precluded evidence that relates directly to the reliability (or lack thereof) of inculpatory statements made by [Appellant] during a police interrogation where the Commonwealth presented — and heavily relied upon — evidence of [Appellant's] inculpatory statements regarding the sexual assault at trial?

> [III.] Did the trial court err and/or abuse its discretion when it denied [A]ppellant's pre-trial motion to suppress a statement made to police investigators where: [A]ppellant waived his **Miranda** rights and provided a statement when police informed him that he was being charged with homicide; and, [A]ppellant was not re-advised of his **Miranda** rights, and did not waive those

rights knowingly, intelligently, and voluntarily, when several hours later police began to question defendant about a separate sexual assault occurring on a different date than the homicide in a different jurisdiction?

[IV.] Is the sentence imposed unduly harsh and excessive?

Appellant's Brief at 6-7.

First, Appellant challenges the trial court's ruling to preclude evidence of the Facebook post that E.M. made after Appellant was acquitted of the murder of her father. Initially, we observe that,

> [t]he standard of review employed when faced with a challenge to the trial court's decision as to whether or not to admit evidence is well settled. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion. Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Young*, 989 A.2d 920, 924 (Pa. Super. 2010) (citations omitted).

In the Facebook post sought to be admitted by Appellant, E.M. made disparaging remarks about Appellant, and insisted that he was guilty of murdering her father, despite his acquittal for that crime. *See* TCO at 6 (quoting N.T. Trial, 12/18/18, at 15-16). Appellant wished to admit E.M.'s Facebook post to show that she had a motive to fabricate her sexual-assault allegations against him, in that she "sought to punish [Appellant] for her father's murder[,] notwithstanding the jury's verdict…." Appellant's Brief at

47. The trial court denied Appellant's motion to admit E.M.'s post. It provided

the following rationale for its decision in its opinion:

> The court concluded that the posting lacked relevance and might lead to jury confusion. Since [E.M.] reported the rape before Appellant was acquitted of her father's murder, Appellant's argument that the post was necessary to show bias or motive to fabricate is unpersuasive. Thus, her expressive disagreement with the verdict or possible factual determinations in that case offered no probative value to the instant trial. Accordingly, the court properly excluded the posting as not relevant.
>
> Assuming, *arguendo*, that evidence of the post had any probative value, it would be far outweighed by the risk of this trial being subsumed by the alleged events of Appellant's murder trial. Appellant sought to import factual issues and assertions that pertained only to the murder case, and hopefully to also influence the jury to adopt its outcome. By contrast, the court sought to have this case tried on its own merits, and [to] prevent it from becoming a retrial of the homicide case. No curative instructions would have been sufficient to safeguard this case from undue jury confusion and prejudice.[3] Accordingly, the court properly concluded that the contents of the posting were far more prejudicial than probative.
>
> > [3] The expletives used in that post, while irrelevant, would have served only to inflame the jury.
>
> For whatever reason, the defense elected not to ask [E.M.] about her feelings regarding the acquittal, an area of inquiry which the court did permit, and to which the Commonwealth had agreed. N.T.[,] 12/18/18, [at] 19-20. Such exploration would have accomplished Appellant's goal of eliciting that testimony, without introducing the details of the post or the homicide trial. Of course, if the complainant's responses to such questioning contradicted her prior expressions in the post, then the court could and would have reconsidered its ruling on impeachment grounds.

TCO at 6-7.

Based on the rationale set forth by the trial court, we discern no abuse of discretion in its pre-trial ruling to preclude E.M.'s Facebook post. Therefore, Appellant's first issue is meritless.

Second, Appellant challenges the court's pre-trial ruling to preclude him from presenting alibi evidence that was admitted at his homicide trial. Specifically, Appellant was prevented from introducing "surveillance video from SEPTA and/or cell phone location data" that indicated he was not at the scene of the homicide at the time it was committed. Appellant's Brief at 41. According to Appellant, this evidence proved "that his confession to being at the scene of the murder was false, unreliable, and coerced[,]" and "if the homicide portion of the confession was patently unreliable, then the portions relating to the sexual assault are likewise questionable[,] since they were taken on the same day, during the same interrogation, by the same detectives." *Id.* (citations to the record omitted). Appellant insists that he should have been permitted to introduce this evidence, as it "is beyond cavil that evidence which would raise a reasonable inference that could call the veracity, accuracy, and reliability of these inculpatory statements into question is relevant." *Id.* at 42.

Even if we agreed with Appellant that the at-issue evidence was relevant, he ignores that even relevant "evidence may be excluded 'if its probative value is outweighed by ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or ***needlessly presenting cumulative evidence***.'" ***Commonwealth v. Christine***, 125 A.3d 394, 398

(Pa. 2015) (quoting Pa.R.E. 403) (emphasis added). Here, "the jury had already been informed that Appellant was acquitted of the murder after presenting alibi evidence." TCO at 8 (citing N.T., 12/19/18, at 160-61, 207). Therefore, the video surveillance footage and cell phone location data, which Appellant sought to introduce to prove that he had an alibi for the homicide, was merely cumulative evidence of that already-established fact. *See Commonwealth v. Flamer*, 53 A.3d 82, 88 (Pa. Super. 2012) (citations omitted) ("We define cumulative evidence as 'additional evidence of the same character as existing evidence and that supports a fact established by the existing evidence.'"). The trial court also had good reason for not permitting this needlessly cumulative evidence, explaining that it "would conflate unrelated issues of the two trials, and cause undue jury confusion." *Id.* Again, the court's "goal was to have the trial of this August 22, 2015 sexual assault occur on its merits, and not let it devolve into a retrial of the September 27, 2015 homicide for which Appellant was acquitted." *Id.* Accordingly, the court precluded the alibi evidence Appellant sought to introduce, and we discern no abuse of discretion in that decision.

In Appellant's third issue, he challenges the court's pre-trial ruling denying his motion to suppress the inculpatory statements he made to police during his interrogation on November 2, 2015. Appellant insists that his statements were involuntary because he was arrested and provided with *Miranda* warnings pertaining only to the murder of E.M.'s father. At no point did the interrogating detectives advise Appellant that his statements could be

used against him in prosecuting the sexual assault crimes, yet the detectives questioned him about those offenses. Appellant also argues that the *Miranda* warnings, provided at 8:25 a.m., were too far removed from his confession regarding the sexual assault of E.M., provided at or after 5:40 p.m., to establish that his statement was voluntarily, intelligently, and knowingly given.

We begin by recognizing:

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (cleaned up).

In addition, our Court has explained:

A confession obtained during a custodial interrogation is admissible where the accused's right to remain silent and right to counsel have been explained and the accused has knowingly and voluntarily waived those rights. The test for determining the voluntariness of a confession and whether an accused knowingly waived his or her rights looks to the totality of the circumstances

surrounding the giving of the confession. The Commonwealth bears the burden of establishing whether a defendant knowingly and voluntarily waived his *Miranda* rights.

When deciding a motion to suppress a confession, the touchstone inquiry is whether the confession was voluntary. Voluntariness is determined from the totality of the circumstances surrounding the confession. The question of voluntariness is not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess. The Commonwealth has the burden of proving by a preponderance of the evidence that the defendant confessed voluntarily.

*Commonwealth v. Harrell*, 65 A.3d 420, 433-34 (Pa. Super. 2013) (cleaned up).

Here, at the suppression hearing, the Commonwealth presented the testimony of Detective Henry. N.T. Hearing, 12/20/17, at 4. He testified that on November 2, 2015, he executed a warrant for Appellant's arrest for the homicide of E.M.'s father. *Id.* at 5. Appellant was taken into custody at his home in Philadelphia at 6:49 a.m., and advised that he was being arrested for the homicide. *Id.* at 5, 8. Appellant was then transported to the Montgomery County Detective Bureau. *Id.* at 6. Once there, he was given *Miranda* warnings at approximately 8:25 a.m. *Id.* at 9. The *Miranda* warnings were set forth on a written form, which stated that Appellant was being investigated for homicide. *Id.* at 7. He was at no point notified, on the written form or verbally by Detective Henry, that he was also suspected of sexually assaulting E.M. *Id.* Appellant signed the waiver form. *Id.* at 11.

Between 9:27 a.m. and 10:56 a.m., Detective Henry recorded a formal statement by Appellant. *Id.* at 12. Appellant was asked various questions,

- 11 -

including whether he ever had sex with E.M. *Id.* He denied that he did. *Id.* at 15.[2] Detective Henry then paused Appellant's statement from 10:56 a.m. to 2:56 p.m. *Id.* During the four-hour break, however, Detective Henry claimed that he continued to question Appellant "off-the-record" about various topics, including the sexual assault of E.M. *Id.* at 17. Appellant's statement resumed at 2:56 p.m., and he was questioned exclusively about E.M.'s assault allegations until approximately 3:05 p.m. *Id.* at 20. During that questioning, Appellant admitted to having oral sex with E.M. *See* N.T. Trial, 12/19/18, at 153.[3] He also admitted that he heard Abdul-Ali tell E.M. not to tell anyone. *Id.* at 154.

At that point, another detective, disguised as a DNA lab analyst, entered the interrogation room and falsely told Appellant that his DNA had been found at the homicide scene. N.T. Hearing at 20. Detective Henry then paused Appellant's statement from 3:35 p.m. until 5:39 p.m. *Id.* at 23. During that

---

[2] Detective Henry testified that he questioned Appellant about the sex offenses against E.M. to establish Appellant's "relationship with the co-defendant and also if he knew the [homicide] victim or the victim's daughter[, E.M.]" *Id.* at 22.

[3] We recognize that in *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013), our Supreme Court held that our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. Here, Appellant's full statement was admitted into evidence at the suppression hearing. *See* N.T. Hearing at 31. However, it was not read into the record during Detective Henry's testimony in that proceeding, as it was during the detective's trial testimony. Because Appellant's statement is not contained in the certified record before us on appeal, we refer to Detective Henry's trial testimony to discern the contents of Appellant's statement to police. This does not violate the rule announced in *In re L.J.*, as the trial court had Appellant's full statement before it when ruling on his suppression motion.

break, Appellant was again questioned "off the record" about various topics, including the sexual assault of E.M. *Id.* at 23, 25. When the formal statement resumed at 5:39 p.m., the first questions asked by Detective Henry were about the sexual offenses alleged by E.M. *Id.* at 25. Appellant at some point thereafter admitted that he had vaginal intercourse with E.M., and that he had attempted to have anal intercourse with her, as well. N.T. Trial, 12/19/18, at 158.

At the close of the suppression hearing, the trial court denied Appellant's motion to suppress his statements about the sexual offenses committed against E.M. Notably, however, the court offered no factual findings, nor any clear legal determinations. Instead, the court stated only the following:

> THE COURT: I'll be as specific as I can. I'll deny the motion to suppress in that ***Miranda*** … has taken us [in] so many directions. I know what I'm looking for as far as [Appellant's] not being advised what he's questioned about. I understand [what] that means. I guess it's a pointed issue. When he starts saying someone is giv[ing] a statement [and] that they have weighed [*sic*] their rights and want to speak and take the train down the track. I'm not ready to find those facts here, … and I deny the motion at this time.

*Id.* at 37.

Appellant now contends that the trial court's ruling to admit his inculpatory statements was error. He insists that his statements regarding the sex offenses committed against E.M. were involuntary because the ***Miranda*** warnings provided by Detective Henry made no mention of those offenses and pertained solely to the homicide crime. Additionally, he claims that the warnings were stale and too far removed from his inculpatory

statements to demonstrate their voluntariness. In support of his arguments,

Appellant relies primarily on two cases, **Commonwealth v. Riggins**, 304

A.2d 473 (Pa. 1973), and **Commonwealth v. Wideman**, 334 A.2d 594 (Pa.

1975). In **Riggins**, our Supreme Court explained:

> There is no prophylactic rule that a suspect must be re[-]warned of his constitutional rights each time custodial interrogation is [renewed]. Instead, we must view the totality of circumstances in each case to determine whether such repeated warnings are necessary.
>
> Pertinent to such an inquiry are the length of time between the warnings and the challenged interrogation, whether the interrogation was conducted at the same place where the warnings were given, whether the officer who gave the warnings also conducted the questioning, and whether statements obtained are materially different from other statements that may have been made at the time of the warnings.

**Riggins**, 304 A.2d at 477-78 (quoting **Commonwealth v. Bennett**, 282 A.2d

276, 280 (Pa. 1971)).

The **Riggins** Court ultimately held that the police in that case had been

required to re-advise Riggins of his **Miranda** rights, based on the following

circumstances:

> Seventeen hours elapsed between [Riggins'] initial **Miranda** advisement and his oral confession; the warnings were given in the police car, while the interrogation was conducted at the Police Administration Building in downtown Philadelphia; the officers who gave the warnings had no further contact with [Riggins] once he arrived at the Administration Building and the questioning began…[; and] the oral confession was obviously 'materially different' from the denials [Riggins] had given, regarding the robbery and murder, for the 17 hours preceding its elicitation.

**Id.** at 478.

Analyzing the **Bennett** factors several years later in **Wideman**, the Court again concluded that officers should have re-advised Wideman of his constitutional rights. There, twelve hours had elapsed between the **Miranda** warnings and Wideman's confession; the warnings and confession occurred in different rooms of the Police Administration Building; the officers that provided Wideman's **Miranda** warnings were not present when he confessed; there was a material difference between the statements that Wideman made in the morning after the **Miranda** warnings were provided and his confession provided that evening; and the continuity of the interrogation was broken on several occasions, including when Wideman was permitted to sleep for 3½ hours. **Wideman**, 334 A.2d at 599. Accordingly, the **Wideman** Court held that Wideman "should have been re[-]advised of his **Miranda** rights prior to the interrogation session during which the complained of statement was elicited." **Id.** Because he was not, his confession was inadmissible. **Id.**

In the present case, Appellant argues that,

[a]s in **Riggins** and **Wideman**, there was a "material difference" between the statements given to police shortly after a reading of the warnings, and those hours later. Namely, [Appellant] initially denied involvement in the sexual assault, but "[b]y the end of questioning, he confessed to both the murder and the sexual assault." [TCO at] 2-3 (citing written statement motion Exhibit C-1). In addition, [Appellant] was told he was being investigated for a September murder in Montgomery County (that he was later acquitted of because he had an alibi) when he waived his **Miranda** rights. However, … both afternoon sessions of the interrogation opened with questions related exclusively to the August sexual assault in Philadelphia. … [T]his is a materially different line of questioning.

> As in **Wideman**, the continuity of interrogation was broken on several occasions including a four[-]hour break, and a subsequent two hour break, in the interrogation.
>
> Accordingly, pursuant to the Supreme Court's decisions in **Wideman** and **Riggins**, [Appellant] should have been readvised of his **Miranda** rights prior to the afternoon interrogation sessions relating to the sexual assault.

Appellant's Brief at 39-40.

In response, the Commonwealth first posits that Appellant's homicide crime and the sexual assault of E.M. were sufficiently similar, so as to notify Appellant that he would likely be questioned about both, despite that he was only notified of the homicide charge in the **Miranda** warnings. Next, the Commonwealth insists that the **Bennett** factors support the court's denial of suppression. It reasons that Appellant's interrogation was not unduly lengthy, and "the afternoon portions of [Appellant's] statements were not 'materially different' such that new warnings were required." Commonwealth's Brief at 21. The Commonwealth also argues that "[a]lthough [Appellant] was appropriately afforded breaks to smoke and use the restroom, the questioning was not interrupted or paused for any significant length of time. Nor was there a change in location such that the initial **Miranda** waiver would not reasonably be understood to continue in effect." **Id.** at 22.

Moreover, the Commonwealth rejects Appellant's attempt to construe his interrogation as involving "three distinct written statements separated by hours of total cessation of questioning…." **Id.** at 23. Instead, it claims the interrogation should be "more appropriately viewed as one session of oral questioning, during which [Appellant's] responses were periodically

- 16 -

memorialized in writing." *Id.* It asserts that there was a "clear continuity of interrogation[,]" *id.* at 20, and it characterizes all breaks and interruptions as insignificant, including the interjection by the detective pretending to be a DNA lab technician. The Commonwealth reasons that this interruption was immaterial, as it "concerned the murder charges against [Appellant,] and he concedes that he was fully aware from the outset that he was being questioned about those charges." *Id.* Thus, the Commonwealth asks this Court to find that the *Bennett* factors support the trial court's decision to deny Appellant's motion to suppress his statement.

We cannot properly review the suppression court's decision, and assess the arguments made by the parties, based on the record currently before us. Pennsylvania Rule of Criminal Procedure 581 states that, at the conclusion of a suppression hearing, "the judge *shall* enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights, or in violation of these rules or any statute, and shall make an order granting or denying the relief sought." Pa.R.Crim.P. 581(I) (emphasis added). Our Supreme Court has "stress[ed] … the essential purposes served by the Rule, and … disapprove[d] of non-compliance with its unambiguous mandate." *Commonwealth v. Millner*, 888 A.2d 680, 688 (Pa. 2005). The *Millner* Court explained that,

> it is often the case (for example, where a waiver trial occurs) that the suppression judge is different from the trial judge yet, if there is a conviction, it will be the trial judge who will be responsible for preparation of the Rule 1925 opinion for appeal. Thus, in cases where suppression is denied, a trial occurs, and a conviction

- 17 -

ensues, and the defendant seeks to challenge the suppression ruling, the timely and specific ruling the suppression judge is required to enter under Rule 581(I) is essential to ensuring that the trial judge and the appellate courts will have a record upon which they can timely and meaningfully discharge their responsibilities.

*Id.* at 689.

Here, the suppression judge wholly failed to satisfy the requirements of Rule 581(I). That judge then left the bench and a different judge presided over Appellant's trial. In the court's Rule 1925(a) opinion, it offers no discussion of this issue, simply referring this Court to the portion of the record containing the above-quoted ruling by the suppression judge. *See* TCO at 4 n.2. Accordingly, we have no factual findings or legal determinations by *any* trial judge — let alone findings of fact by the suppression judge who actually viewed the witnesses and ruled on the issues raised herein — to enable us to complete our task of "determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Smith*, 164 A.3d at 1257. Clearly, there are factual issues to be determined in this matter. For instance, a finding must be made about whether Appellant was aware he could be questioned about the assault, even though the *Miranda* warnings pertained only to the homicide. Additionally, findings of fact are necessary regarding the parties' disputes on several of the *Bennett* factors, including whether Appellant's afternoon statements were materially different from his initial remarks to the detectives, what transpired during the hours-long breaks in Appellant's written statement, and the impact of interruptions on the continuity of Appellant's

statement (including when a detective pretended to be a DNA analyst). Thus, remanding for the trial court to make such factual findings is necessary. Moreover, because the instant trial judge did not have the benefit of viewing the witnesses firsthand, a whole new suppression hearing is warranted.

Accordingly, we vacate Appellant's judgment of sentence and remand for a new suppression hearing.[4] At the close thereof, the court shall issue specific findings of fact and conclusions of law. If the court decides to deny Appellant's motion to suppress, no new trial will be necessary, and the court may reimpose Appellant's judgment of sentence.[5] If the court decides to grant Appellant's motion to suppress, it shall also grant him a new trial.

Judgment of sentence vacated. Case remanded for further proceedings. Jurisdiction relinquished.

President Judge Panella and Judges Lazarus, Stabile and Kunselman join this opinion.

Judge MCCaffery files a Concurring/Dissenting Opinion in which Judges Bowes, McLaughlin and King join.

---

[4] In light of our vacating Appellant's present judgment of sentence, we decline to address his fourth issue challenging the discretionary aspects of his sentence at this time.

[5] Appellant may then file an appeal raising any challenges to the suppression court's ruling and/or discretionary-aspects-of-sentencing claim(s).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/6/2022